**No. 50589.**—Protest 106505–K of Geo. S. Bush & Co., Inc. (Portland, Oreg.).

TILSON, Judge: This suit involves the proper classification of certain imported merchandise described on the invoice as "Manganese Steel Anchor Chain Connecting Links for Cargo Vessels." The collector classified the merchandise as manufactures of metal, not specially provided for, and assessed duty thereon at the rate of 45 percent ad valorem under paragraph 397, Tariff Act of 1930. The plaintiff claims the merchandise to be properly dutiable at 1½ cents or 2 cents per

pound, as anchor or stud link chains, under paragraph 329; at 25 percent ad valorem, as forgings, under paragraph 319; at 15 percent ad valorem, under paragraph 319, as amended by the British trade agreement, T. D. 49753, as anchors and parts thereof; at 10 percent ad valorem under paragraph 327, as amended by the Canadian Trade Agreement, T. D. 49752, as castings; or at 20 percent ad valorem under paragraph 304, as iron molded steel castings.

At the trial of the case a sample of the merchandise was admitted in evidence, and counsel for the plaintiff offered the testimony of one witness.

Plaintiff's witness testified that the imported articles had been cast; that these articles are used to connect anchor chain shots; that an anchor chain shot varies in length, six anchor chain shots usually making a 90-foot anchor chain; that the diameter of the imported articles was 2⅟₁₆ inches; that these imported articles are not forged; that the imported articles are not parts of an anchor; that these articles are not further processed after importation, except to insert the pin between the links; and that they are used only to connect the various shots of chain that go to make up an anchor chain.

On the present record we must hold that the imported merchandise is not chain, anchor or otherwise, but is nothing more than a mere connecting link, or parts of anchor chains. Since there is no provision for parts of anchor chain in paragraph 329, the claim under that paragraph is untenable. Likewise the claim as forgings under paragraph 319 is untenable, since the record shows that the articles are not forged, but are cast.

Neither can the claim under paragraph 319, as amended, as anchors and parts thereof be sustained, because the plaintiff's witness testified that the imported articles are not part of the anchor, and that they do not have anything to do with the anchor.

As to the claim as castings under paragraph 327, as amended, this paragraph covers only castings which have not been made up into articles, or parts thereof. In this connection the record shows that with the exception of inserting the pin which holds the two pieces together, the imported merchandise are completed articles. The witness testified that after these articles are cast "They have to remove the gates and risers and fines." "And then in most cases it has to be some sort of a needling process. It isn't fit for use as it comes from the sand"; that all of this was done with the imported articles before importation; and that they could not be used for anything other than connecting chains. Upon this state of the record the claim under said paragraph 327 must be overruled.

With reference to the claim under paragraph 304, the plaintiff's witnesses testified as follows:

A. They are to connect the various shots of chain together that go to make up the chain that an anchor hangs on on a ship.

X Q. Now, is there anything else done to that link or that imported article?—A. No.

\*     \*     \*     \*     \*     \*     \*

X Q. You could not use the imported articles, as imported, for anything other than connecting chains, is that correct?—A. No, that is right.

\*     \*     \*     \*     \*     \*     \*

R. X Q. Mr. Buckner, on any casting which is removed from the molds it is then sent to the factory, isn't it, or to the firm that makes it to be sold?—A. No.

R. X Q. Is there anything done to it?—A. Yes, sir. You want me to tell you?

R. X Q. Generally, yes.—A. They have to remove the gates and risers and fines.

R. X Q. I see.—A. And then in most cases it has to be some sort of a needling process. It isn't fit for use as it comes from the sand.

R. X Q. Now, was that done in connection with Illustrative Exhibit A?—A. Yes, sir.

R. X Q. And was it done with the imported articles?—A. Yes, sir.

R. X Q. Before they had been imported?—A. Yes, sir.

The above testimony would appear to bring the imported merchandise squarely within the holding of this court in the case of *Schlossmann* v. *United States*, T. D. 12814 (G. A. 1410):

\* \* \* But when a product of the foundry has been finished, or fitted by a machinist into an implement, machine, or part of a machine, it is no longer known technically, popularly, or commercially as a casting, but enters into another class of manufactures of iron.

On the evidence presented and for the reasons stated, all claims of the plaintiff in this case are hereby overruled. Judgment will be rendered accordingly.